### DECIDED IN

# THE SUPREME COURT

### OF THE

# STATE OF UTAH

*(Continued from Vol. 59.)*

## BANKERS' TRUST CO. v. RITER et al.

No. 3735.   Decided April 6, 1922.   (206 Pac. 276.)

1. APPEAL AND ERROR—QUESTION AS TO DEFECT OF PARTIES HELD MOOT AS TO ONE FILING DISCLAIMER. In a partnership accounting, the general equity rule is that all persons interested in the subject-matter should be before the court; but a contention that one should have been made a party becomes a moot question where such person files a disclaimer of any interest in the suit.

2. EQUITY—DELAY IN BRINGING SUIT NOT LACHES UNLESS INJUSTICE OR UNFAIR ADVANTAGE RESULTS. Unless it is proved that the right to recover is barred by limitations statute, delay in bringing action, unless necessarily resulting in an injustice or unfair advantage, will not constitute laches.

3. PARTNERSHIP—PLAINTIFF'S SHOWING IN SUIT FOR ACCOUNTING, ON WHICH THE COURT GRANTED NONSUIT ON GROUND OF LACHES, HELD SUCH AS TO REQUIRE A HEARING ON TESTIMONY AND FINDINGS. In a suit for a partnership accounting, plaintiff's showing *held* such that the court, which granted a motion for nonsuit at the close of plaintiff's case, should have heard the testimony and made findings on the issues presented by the pleadings, and on which the testimony was submitted.[1]

[1] Citing *Jones Mining Co.* v. *Cardiff Mining Co.*, 56 Utah, 449, 191 Pac. 426; *Sharp* v. *Sharp*, 54 Utah, 262, 180 Pac. 580.

(1)

Appeal from District Court, Third District, Salt Lake County; *G. A. Iverson*, Judge.

Action by, the Bankers' Trust Company, as administrator with the will annexed of the estate of George Y. Wallace, deceased, against L. E. Riter, Jr., and others.

Judgment for defendants, and plaintiff appeals.

JUDGMENT VACATED AND REVERSED, and cause remanded to the district court for further proceedings.

See, also, 56 Utah 525, 190 Pac. 1113.

*R. A. McBroom* and *Geo. Y. Wallace,* both of Salt Lake City, for appellant.

*Pierce, Critchlow & Marr* and *Ray & Rawlins,* all of Salt Lake City, for respondents.

GIDEON, J.

The appellant, plaintiff below, brings this action as the administrator with' the will annexed of the estate of George Y. Wallace, deceased. L. E. Riter, Jr., and two other defendants are the sole heirs of L. E. Riter, deceased. Defendant L. E. Riter, Jr., the administrator of the estate of L. E. Riter, deceased, is also made a defendant. The action is for an accounting of the partnership of L. E. Riter & Co.

In 1881 L. E. Riter, George Y. Wallace and C. W. Lyman entered into a partnership under the firm name of L. E. Riter & Co. This partnership engaged in a general merchandise and forwarding business at Silver City, Utah. L. E. Riter was the managing partner. He exercised control over the receipts and disbursements of the firm, and had full direction and control of all its books of account. L. E. Riter died in July, 1903. George Y. Wallace died in 1916. After the death of L. E. Riter, and at the request of George Y. Wallace, the

surviving partner, the respondent L. E. Riter, Jr., acted in his father's place and managed the affairs of the partnership until the fall of 1904. At that time the mercantile business was sold and transferred to the L. E. Riter Company, a corporation organized about that date. The merchandise on hand, accounts receivable, store building, warehouse, stables, and office fixtures of L. E. Riter & Co. (partnership) were conveyed to the L. E. Riter Company, a corporation. A "statement of the condition of L. E. Riter & Co. at that time showed that among the assets of the partnership was 'Bullion mine, one-half interest, bonded for $7,000.' " There is found on the books of L. E. Riter & Co. what is designated the Bullion Mine account. That account dates from the year 1894. In 1902 a lease and bond or option were given for the purchase of this mine, the purchaser paying at that time the sum of $375. The last payment on the purchase price of the mine was made in 1908, when the defendants L. E. Riter, Jr., L. C. Riter, and Isabella C. Riter, "as sole heirs at law of L. E. Riter, deceased," conveyed the mining property to the New Bullion Mining Company. This account also indicates that about $4,500 of the funds of L. E. Riter & Co. had been expended in acquiring a half interest in this mine and in developing the same.

Referring to the mine account, George Y. Wallace, Jr. (son of George Y. Wallace, deceased), testified that in 1913, when he, his father, and L. E. Riter, Jr., were discussing certain affairs of the Riter corporation, George Y. Wallace, Sr., inquired of Mr. Riter about the item of $7,000 as shown on the statement above referred to and rendered in 1904. The latter replied that some payments were coming in, but that they were slow, and that something might be gotten out of it at some time.

There was much evidence regarding the books, and especially what was termed the Iron Dragon Mine account. It is not necessary or advisable in this opinion to attempt to review this evidence.

At the close of appellant's case the court granted a motion

for a nonsuit, and from the judgment entered thereon plaintiff appeals.

Viewing the evidence in the light most favorable to the plaintiff it seems clear that the books and the testimony offered by appellant indicate that, if the Bullion mine did not belong to the partnership, but was the property of L. E. Riter, deceased, personally, then $4,500 of the firm's funds should be accounted for. This state of affairs is of itself sufficient, in the light of the surrounding circumstances, to convince us that the court erred in granting the nonsuit. One of the grounds for objecting to the testimony on the part of the plaintiff, and also one ground for the motion for nonsuit, was that all the necessary parties were not before the court. C. W. Lyman, one of the members of the firm of L. E. Riter & Co., resided at Omaha, Neb., and had not resided in Utah since about the year 1893. Respondents contend that Lyman was a necessary party to this action for the reason that no decree can be effective, and which will finally settle the partnership affairs, without all interested parties being before the court.

"In a suit for an accounting, the general equity rule in regard to parties applies, namely, that all persons interested in the subject-matter, that is, in the accounting, should be before the court, to the end that complete justice may be administered." See 1 C. J. § 93, p. 631.

To that general rule there are certain exceptions, as when one or more of the parties reside out of the jurisdiction of the court. 1 C. J. § 93. If it were indispensably necessary to have all parties interested in the accounting before the court, it would necessarily follow that no accounting could be had at all if one of the several partners resided out of the state, and refused to voluntarily submit to the jurisdiction of the court. Under such state of facts courts would be powerless in a suit for an accounting to do justice between the litigants residing in its jurisdiction. *Beck* v. *Thompson*, 22 Nev. 109, 36 Pac. 562. However, in this case the question of proper parties not being before the court is a moot question. Before the final submission of the case for determination the defendant Lyman filed a disclaimer of any

interest in this suit, and denied that he had ever had any interest in the partnership of L. E. Riter & Co.

The most difficult question involved on this appeal, and the one upon which the district court seems to have based its decision, is whether George Y. Wallace, deceased, and his representative, should be charged with laches in regard to the accounting. It is shown that L. E. Riter, Jr., after the death of his father in 1903, under the general direction of George Y. Wallace, the surviving partner, assumed and had charge of the partnership affairs and, for a time at least, conducted its business. It is evident that Wallace, Sr., had absolute confidence in L. E. Riter, Jr., and the relationship between them was friendly and confidential. This confidential relationship is an important circumstance in determining whether delay by Wallace, as surviving partner, constitutes such laches as to defeat any right to an accounting. 1 C. J. § 249, p. 250. The facts as to the payments made on the Bullion mine account do not appear to have been known to Mr. Wallace. Admittedly, whatever payments were made by the purchasers of that mine were made to L. E. Riter, Jr. Under such circumstances George Y. Wallace in his lifetime, and his representatives after his death, cannot be charged with laches, the delay not having resulted in prejudice to the respondents. 1 C. J. § 345, p. 249. Unless it is proved that the plaintiff's right to recover is barred by the statute of limitations, delay in instituting an action, unless such delay would necessarily result in an injustice or unfair advantage, is not sufficient in equity to constitute laches. The testimony of the appellant tended to prove that the issues in dispute between the parties had by process of elimination been very materially narrowed, and it would appear not to be difficult for a court to determine the rights of the parties without attempting to take an accounting of the entire transactions of the partnership. In any event, in our judgment, the showing on the part of the appellant was such that the court should have heard the testimony and made findings upon the issues presented by the pleadings, and upon which testimony was submitted. *Jones Mining Co.* v. *Cardiff Mining Co.,* 56 Utah, 449, 191 Pac.

426; *Sharp* v. *Sharp,* 54 Utah, 262, 180 Pac. 580; *Riddle* v. *Whitehill,* 135 U. S. 621, 10 Sup. Ct. 924, 34 L. Ed. 283. Courts have frequently stated that, where laches is claimed to exist, each case must depend upon its own facts and circumstances. In the instant case no one has been prejudiced by delay. With one exception, all the books of L. E. Riter & Co. were produced in court. The one who had had charge of the partnership affairs since 1903, and who collected the Bullion mine payments, is within the state, and is a party to this action. Since the death of George Y. Wallace in 1916 there does not seem to have been any unnecessary delay, or absence of diligence, on the part of appellant.

Treating the appellant's evidence as true, and considering the necessary inferences deducible therefrom, as the court must and should in determining a nonsuit, we are of the opinion, and so hold, that the court erred in granting the motion of respondents for a dismissal of this action.

The judgment of the district court is therefore vacated and reversed, and the cause is remanded to the district court for further proceedings. Costs of this appeal to be taxed against respondents.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.